UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>MARK ANTHONY FIGUEROA<br><br>Defendant. | Criminal No. 1:21-10333-RGS |

## GOVERNMENT'S SENTENCING MEMORANDUM

Mark Anthony Figueroa was involved in a multi-year conspiracy to launder hundreds of thousands of dollars of the proceeds of drug trafficking (likely his) to further Sinaloa drug cartel's mission of flooding the United States with heroin, cocaine, and fentanyl. His delivery of this money helped ensure the continued delivery of drugs into this region. This conduct merits a significant term of incarceration at the top end of his guideline sentencing range. The government therefore recommends a term of incarceration of 132 months.

## FACTUAL BACKGROUND

**I.      Background of the Investigation**

In February 2017, agents from Homeland Security Investigations ("HSI") conducted a controlled purchase of 850 grams of cocaine from Francisco Torres, who at the time was an employee of JetBlue Airways at Logan International Airport in Boston. PSR ¶ 8. That controlled purchase resulted in Torres's arrest on February 16, 2017. *Id.* On February 23, 2017, agents interviewed Torres. *Id.* During that interview, Torres stated that his source of supply for cocaine was an individual name Jose Santiago, and that Santiago's source of supply was an individual with the nickname "Maiky," who investigators later identified as Figueroa. *Id.* Santiago and Figueroa

are cousins. *Id.* During that interview, Torres told investigators that Figueroa imported 5-20 kilograms of cocaine from Mexico at a time. *Id.*

## II.     Money Laundering Conspiracy Among Figueroa and Joaquin Coboj-Acosta

As the investigation progressed, investigators identified Joaquin Coboj-Acosta ("Coboj") as an associate of Figueroa. *Id.* ¶ 9. Figueroa's mobile phone was searched twice at the border – on March 14, 2018 and February 27, 2020 – and both searches showed connections to Coboj. *Id.* Coboj and Figueroa participated in the following money laundering events:

### A.     Delivery of $148,100 to Undercover Agents on November 13, 2018

In early November 2018, Coboj coordinated two deliveries of cash to an undercover agent ("UC") in Boston, Massachusetts, whom Coboj believed was affiliated with a money-laundering organization. *Id.* ¶ 10. On November 13, 2018, after Coboj was provided with the UC's contact information, Figueroa called the UC. *Id.* The UC arranged for Figueroa to deliver the cash at the Sheraton Boston hotel. *Id.* The UC provided Figueroa with a room number. *Id.*

On November 13, 2018, at 12:00 pm, investigators observed Figueroa and his partner, Cindy Villada Toro ("Villada") arrive in a GMC Sierra registered to Figueroa. *Id.* ¶ 11. Once inside, Figueroa retrieved a Louis Vuitton box from the bag and showed the UC $132,000 in cash bundled in stacks with rubber bands. *Id.* After the UC and Figueroa confirmed the amount, Figueroa departed. Soon thereafter, agents observed Figueroa exit the hotel lobby, get back into the GMC Sierra truck, and depart. *Id.*

On November 13, 2018, Coboj also coordinated the delivery of $16,100 to the UC by Carlos Estrella. *Id.* ¶ 12. After Figueroa delivered money to the UC, Coboj called the UC and asked him to wait "for forty minutes or an hour" for another guy to "give you 16 and a half." *Id.* Soon thereafter, investigators observed Estrella approach the hotel carrying a black backpack. *Id.* The UC then met him in the lobby and brought him to the room. *Id.* Estrella then opened a black

backpack and removed a brown paper bag, which contained several rubber-banded bundles that totaled $16,100. *Id.* Pursuant to Coboj's instructions, the UC then sent the funds, less the commission amount, via wire transfers to multiple Mexican bank accounts. *Id.*

      B.      <u>Delivery of $80,010 to San Diego-based Courier on February 27, 2019</u>

In January 2019, a Mexicali, Mexico based money launderer (the "SOI") began cooperating with San Diego-based HSI agents. *Id.* ¶ 13. The SOI informed investigators of bulk cash deliveries happening around the country, including some in Boston involving Figueroa and Coboj. *Id.*

On February 26, 2019, the SOI informed HSI that the user of 617-755-5296 (Coboj) would coordinate a bulk cash delivery of $80,000. *Id.* ¶ 14. The SOI later reported that the delivery would occur the next morning at the Yotel Boston, 65 Seaport Blvd. *Id.* On February 27, 2019, the SOI advised investigators that a male using 857-756-2667 (Figueroa) contacted the San Diego source to arrange the delivery. *Id.*

Investigators observed Figueroa carry a brown duffel bag from his residence at 117 Paul Gore Street to his white Range Rover and drive straight to Yotel Boston. *Id.* ¶ 15. Inside, Figueroa met the courier, later identified as Alfredo Ibarra Vidal (and who had been accurately described by the SOI) and accompanied him to a hotel room on the third floor. *Id.* ¶ 16. Minutes later, Figueroa exited the room alone, returned to his car with the duffel bag, and departed. *Id.* Minutes after that, Vidal exited the hotel carrying a black backpack and walked to the Bank of America branch at 7 Fan Pier Blvd, depositing $80,010, that was later transferred to Mexico. *Id.*

      C.      <u>Delivery of $85,000 to San Diego-based Courier on March 16, 2019</u>

On March 14, 2019, the SOI told investigators that Coboj's phone would be used to coordinate a delivery of $80,000 in Orlando. *Id.* ¶ 17.

On March 15, 2019, the SOI told investigators it was now also in touch with the individual using 857-756-2667 (Figueroa) and that the pick-up would occur the next day. *Id.* ¶ 18. On the same day, investigators in Boston observed Figueroa travel to Logan Airport. *Id.*

On March 16, 2019, investigators observed Figueroa arrive in the parking lot of Kohl's Department store, 7143 Narcoossee Road, Orlando, FL, where the SOI said the delivery would occur. *Id.* ¶ 19. Figueroa was driving a GMC Sierra, registered to him. At 11:37 a.m., a silver SUV arrived and a male, later identified as Christian Fernandez (who matched the description of the courier identified by the SOI) entered Figueroa's Sierra carrying a black backpack with a cylindrical bag attached to it. *Id.* Figueroa then drove out of the parking lot and dropped Fernandez off at a Dunkin' Donuts down the road, next to a Bank of America branch, where Fernandez deposited $85,000 that was later transferred to Mexico. *Id.* ¶¶ 19-20

D.  Seizure of $100,050 from Figueroa on April 18, 2019

On April 16, 2019, the SOI told investigators that Coboj would be coordinating a cash delivery in Boston on April 18, 2019. *Id.* ¶ 21. In a WhatsApp exchange on April 18, 2019, Coboj stated "Tell me how much you are going to give" and Figueroa responded, "100." *Id.* ¶ 22.

On April 18, 2019, investigators observed Figueroa exit 117 Paul Gore Street carrying a black bag and drive away in his white Range Rover. *Id.* ¶ 23. Massachusetts State Police Trooper David Lucas stopped the Rover for excessive tint on the car windows. *Id.* Lucas asked Figueroa where he was going. *Id.* Figueroa replied that he was going to the bank to deposit $100,000 in cash from his restaurant. *Id.* Figueroa claimed he did this once a month. *Id.* Trooper Lucas then seized the cash, which was later counted and determined to be $100,050. *Id.*

Figueroa (along with two family members) later petitioned for the money to be returned. *Id.* ¶ 24. In their petition, Figueroa and his family members asserted that the money was both from his restaurant and from rent payments that Figueroa's mother had received. *Id.* This explanation

4

was inconsistent with what Figueroa told Lucas on April 18, 2019, and in any event subsequent financial investigation soundly debunked both theories. *Id.*

      E.      <u>Delivery of $138,600 to San Diego-based couriers on July 24, 2019</u>

On July 24, 2019, the SOI had two recorded calls with Coboj. *Id.* ¶ 25. In those calls, he indicated he would be doing a cash delivery. *Id.* The same day, investigators observed Coboj leave Figueroa's residence with Villada. *Id.* Coboj was carrying a re-usable grocery bag. *Id.* Villada and Coboj drove the mile to Envision Hotel on S. Huntington Avenue. *Id.* Coboj exited, met with Alfredo Ibarra Vidal and Sylvia Gonzalez, handed the grocery bag to Ibarra Vidal, and handed a black and white purse to Gonzalez. *Id.* Ibarra Vidal and Gonzalez each deposited $69,300 cash into separate BOA bank accounts. *Id.* ¶ 26. The money was later transferred to Mexican bank accounts.

      F.      <u>Delivery of $109,800 to San Diego-based courier on October 1, 2019</u>

In late September 2019, the SOI advised investigators that Figueroa would be delivering cash to a San Diego-based courier, Ricardo Valenzuela-Gale on October 1, 2019. *Id.* ¶ 27. The SOI told Figueroa by text message when Valenzuela-Gale would be arriving and what he would be wearing. *Id.* Figueroa instructed the SOI that the meeting would happen at Jpizle Kitchen in Jamaica Plain. *Id.* When Valenzuela-Gale arrived, Figueroa walked outside and sat next to Valenzuela-Gale. After entering the restaurant together, they left together and walked together for several minutes. *Id.* Valenzuela-Gale went to the Bank of America branch at 677 Centre Street, Jamaica Plain. *Id.* On the same date, Ricardo Valenzuela-Gale deposited: $75,000 at the BOA branch at 677 Centre Street and $33,700 at the BOA branch at 315 Centre Street into accounts in the names of Covarrubias Tooling and Garcia's Furniture. *Id.* ¶ 28. The money was then transferred to Mexican bank accounts. *Id.*

5

G.      <u>Delivery of $101,000 to Undercover Agents on April 16, 2020</u>

On April 14, 2020, a confidential informant advised DEA Task Force Officer Lucas Hernandez about a $100,000 money delivery in Boston. *Id.* ¶ 29. TFO L. Hernandez provided the informant with a phone number (TFO Alex Hernandez's number). *Id.* Figueroa then called TFO A. Hernandez requesting a pickup. *Id.* Figueroa informed TFO A. Hernandez that there would be approximately $150,000 for delivery. *Id.*

On April 16, 2020, the parties agreed to meet at JPizle. *Id.* ¶ 30. TFOs A. Hernandez and L. Hernandez entered the restaurant, which was closed due to COVID. *Id.* On a table inside the restaurant were bundles of cash that Figueroa said amounted to $100,000. *Id.* TFO A. Hernandez engaged Figueroa in conversation, discussing how the Chinese are the best at laundering money, what banks the undercover officers could use to deposit the money, and whether it was difficult to get product during COVID. *Id.* As to the latter issue, Figueroa said that he had no issues obtaining product, because he was "the factory." *Id.* When TFO A. Hernandez asked Figueroa whether he worked with "el perico," *i.e.*, cocaine, Figueroa said that he worked with everything. *Id.* After the officers left the restaurant, officers counted the money; the total was $101,000. *Id.* ¶ 31.

H.      <u>Delivery of $109,100 to Courier of Unknown Origin on May 1, 2020</u>

At 2:11 p.m. on May 1, 2020, a surveillance officer observed Figueroa arrive at JPizle. *Id.* ¶ 32. JPizle was closed, but Figueroa used a key to open the door. *Id.* At 2:28 p.m., a woman later identified as Leslie Yesabeth Nunez Jara ("Nunez") approached JPizle on foot and entered the restaurant. *Id.* At 3:16 pm, Nunez departed JPizle and entered an Uber. *Id.* She was carrying a white, weighted plastic bag that she had not been carrying when she entered. *Id.* Investigators followed. *Id.* The Uber had a broken left brake light, and at 3:20 pm, MSP Trooper Russell Lloyd stopped the Uber. *Id.* After Nunez disclaimed ownership of the plastic bag, Trooper Lloyd sized it, and it contained $109,100 in US currency. *Id.*

### III.   Drug Trafficking Conspiracy Among Figueroa, Joaquin Coboj-Acosta, Dorian Rojas, and Lennon Carrasco

A.   <u>Background of Investigation into Rojas and Carrasco</u>

On June 11, 2019, Harvard University and Cambridge police officers recovered a FedEx package containing a kilogram of fentanyl and a kilogram of cocaine.  *Id.* ¶ 33.  The package was addressed and delivered to *Dan Hoer, Harvard University, 16 Divinity Avenue, Cambridge, MA*.  *Id.* The return address was *"Soto" 140n71B NE 200th Street, Woodinville, WA 98072*.  *Id.*  Cambridge and Harvard police interviewed Hoer, who said he had no knowledge of the package's origin or contents.  *Id.*  FedEx records show the package was sent from Arizona.  *Id.*  An investigation showed that the package was supposed to have been intercepted by FedEx employee Lennon Carrasco, at the request of former FedEx employee Dorian Rojas.  *Id.* ¶ 34.

Investigators learned that Rojas was expecting another FedEx package on August 1.  *Id.* ¶ 35. The identified package was addressed from: Sylvain, 455 Commanche Cir., Harvard, IL 60033, addressed to: Ms. Sophie Francis, 1350 Massachusetts Ave., Cambridge, MA 02138.  *Id.*  FedEx records show the package was scanned in for shipment on July 25, 2019 in Nogales, AZ.  *Id.*  At 12:03 p.m., Carrasco dropped the package on the doorstep of the apartment complex at 265 Harvard Street.  *Id.*  At 12:04 p.m., investigators observed Rojas retrieve the package and put it in the backseat of his car.  *Id.*  Rojas then returned to work.  *Id.*  At 2:30 p.m.**,** Rojas left work, drove to an apartment complex at 380 Talbot Avenue in Boston, where he discarded a white box and cardboard box in a dumpster, and entered the apartment carrying an orange backpack. *Id.*

Investigators subsequently arrested Rojas in possession of a FedEx package containing a kilogram of heroin and fentanyl.  *Id*. ¶ 36.  The package was addressed to *Mr. Henry Spencer, 1000 Mass Ave, Cambridge, MA* with a return address of *"Rene," 14071B NE 200th St, Woodinville, WA*.  *Id.*

7

B.     Evidence of Figueroa's Involvement

Figueroa's phones were imaged as part of border searches in 2018 and 2020, while Coboj's phone was imaged in 2019. *Id.* ¶¶ 38-40.

Records obtained from FedEx pursuant to grand jury subpoenas identified nearly 50 packages shipped from Arizona to Watertown, MA or Cambridge, MA and scanned by either Rojas or Carrasco dating back to October 2017. *Id.* ¶ 41. Images of FedEx tracking numbers and communications regarding names and addresses associated with many of these historical FedEx packages were found in the border search phone extractions from both Figueroa's and Coboj's phones. *Id.* Of particular importance was an image found on Figueroa's phone that reflected two FedEx packages sent on May 23, 2019 from the sender address of 14071B NE 200th St, Woodinville, WA and sent to two individuals in Cambridge, MA, one at Harvard Yard and the other at Harvard University. *Id.* Both of the FedEx packages seized by law enforcement and found to contain narcotics reflected this same sender shipping address of 14071B NE 200th St, Woodinville, WA, including one package shipped only twelve days after the shipments reflected on Figueroa's phone, also to an individual at Harvard University. *Id.* Additionally, phone records show Dorian Rojas and Figueroa were in contact with one another on August 6, 2019, when Rojas obtained and was arrested with a kilogram of fentanyl. *Id.*

C.     Additional Evidence of Figueroa's Drug Trafficking

On July 25, 2019, a confidential informant placed a phone call to Figueroa, who was using 617-697-4774. *Id.* ¶ 42. In that call, the informant offered to sell kilogram quantities of cocaine to Figueroa for $35,000. *Id.* In response, Figueroa told the informant that he could obtain cocaine

from Michoacan, Mexico for substantially cheaper and that he controls the entire route between Michoacan and Boston. *Id.*

The border search also showed a September 28, 2018 discussion between Coboj and Figueroa concerning the sale of 2,000 pills that are either actual 30 milligram oxycodone pills or counterfeit oxycodone pills containing fentanyl. *Id.* ¶ 43.

## GUIDELINE SENTENCING RANGE

The base offense level is 22, because Figueroa laundered $870,560, which is more than $550,000, but less than $1,500,000. USSG §§ 2S1.1(a)(2), 2B1.1(b)(1)(H). Because Figueroa was convicted under 18 U.S.C. § 1956, a two-level enhancement applies. USSG § 2S1.1(b)(2)(B). His total offense level is therefore 30.

Based on a 2000 conviction in federal court (S.D. Fla.) for conspiracy to possess five kilograms or more of cocaine with the intent to distribute it, Figueroa has three criminal history points, resulting in a criminal history category of II. PSR ¶¶ 65-67.

Figueroa's GSR based upon these calculations is 108-135 months.

## ARGUMENT

**I.    The Nature and Circumstances of the Offense Warrant a Significant Period of Incarceration**

Drug trafficking is about two things: drugs and money. This case is about the money. The government established beyond a reasonable doubt that over a multi-year period, Figueroa helped funnel over $800,000 of drug proceeds to the Sinaloa drug cartel. This amount of money represents kilograms upon kilograms of fentanyl, heroin, and cocaine that had been delivered to Massachusetts for redistribution and which Figueroa helped to pay for. Figueroa's conduct thus ensured that dangerous drugs would continue to flow into Massachusetts.

There is also significant evidence that Figueroa was involved in drug trafficking himself. In recorded conversations, he proclaimed that he worked with all drugs, including cocaine, that he was the "factory," and that he controlled the entire drug importation route from Michoacan to the United States. PSR ¶¶ 30, 42. The connection between Figueroa's drug trafficking was not theoretical.

Drug trafficking cannot happen unless drug traffickers have the money to do it. There is a symbiotic relationship between acquisition and distribution of drugs and drug traffickers, and based upon the volume of cash that Figueroa laundered – just through one money laundering organization – it is clear that he was involved in the distribution of a substantial volume of drugs.

## II. The Nature and Circumstances of the Defendant and the Need for Specific Deterrence Warrant a Significant Period of Incarceration

Although he is only in Criminal History Category II, Figueroa's prior criminal history strongly suggests a significant history of drug trafficking. Figueroa was previously convicted of conspiracy to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. § 846, 841(b)(1)(A), having been sentenced to 120 months in prison. PSR ¶ 65. This prior sentence reflects a significant quantity of drugs that Figueroa was convicted of conspiring to traffic. Sentencing courts should consider a defendant's history and likelihood of recidivism in fashioning the appropriate sentence. *See United States v. Politano*, 522 F.3d 69, 76 (1st Cir. 2008) (considering defendant's "likelihood of recidivism" within its discussion of the § 3553(a) factors). So too here, the Court should consider Figueroa's prior drug trafficking conviction and impose a significant term of incarceration.

Figueroa has further failed to accept any responsibility of his conduct. As reflected in the PSR, he continues to attempt to use "bitcoin mining" as a smoke screen for illicit income earned through drug trafficking. *See* PSR ¶ 108. His failure to accept responsibility shows the need to

10

specifically deter Figueroa from future crimes. *Cf. United States v. Thurston*, 544 F.3d 22, 26 (1st Cir. 2008).

Figueroa engaged in money pickups for the specific purpose of laundering drug proceeds and engaged in significant drug trafficking activity. A significant sentence of imprisonment is warranted to deter Figueroa specifically and others from becoming involved in any way, role, or capacity in the trafficking of cocaine and the laundering of drug proceeds. Figueroa's significant involvement in the offenses of conviction spanned over a two-year period, belying any argument that his involvement was an anomaly. His callous disregard for the countless people who suffered from the drugs he was distributing is what needs to be addressed at sentencing. The government's recommendation of 132 months' incarceration reflects Figueroa's protracted and ongoing role in and the seriousness of the offenses of conviction.

## CONCLUSION

For the foregoing reasons, the Court should impose a term of imprisonment of 132 months, a fine of $250,000, and three years of supervised release.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

Dated: December 8, 2023          By:     /s/ *Evan D. Panich*
                                         EVAN D. PANICH
                                         LEAH B. FOLEY
                                         Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document was served on counsel for the defendant through the ECF filing system.

Dated: December 8, 2023                By:    /s/ *Evan D. Panich*  
                                                                EVAN D. PANICH