UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 0101 1:21CR10333-1 |
| | ) | |
| MARK ANTHONY FIGUEROA | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

## I. INTRODUCTION

Mark Figueroa respectfully submits this memorandum to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a) in light of *United States v. Booker*, 125 S. Ct. 738 (2005).

*Booker* restored this Courts' ability to fashion a sentence tailored to the individual circumstances of the case and the defendant by requiring courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines. Indeed, under Section 3553(a), courts are *required* to sentence *below* the range if such a sentence would be sufficient to achieve the purposes of punishment.

## II. THE OFFENSE

On March 30, 2023, the defendant was found guilty by jury of the one-count Indictment. Count 1 charged Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h) and 18 U.S.C. § 1956(a)(1).

## III.   HISTORY AND CHARACTER OF THE DEFENDANT

Mark Anthony Figueroa is a citizen of the United States.  He was born and first lived in Puerto Rico for the first five years of his life. The presentence report in paragraph 81 accurately recounts the defendant's stepfather physically abused him and his mother. His stepfather had a problem with alcohol and got drunk several times per month, beating up him and his mother, hitting them with objects such as sticks and belts. The Department of Children and Families confirmed that it was involved with the defendant's family in 1987.  The defendant and his family relocated to Boston, Massachusetts and has lived in Boston (Jamaica Plain) since. Mr. Figueroa attended the Boston Public schools including the Kennedy as well as the Curley schools.  He matriculated and graduated from Boston High School.  While attending Boston High School, he participated in an internship where he worked at the State House.  He worked in the Office of the State Comptroller.  More specifically, he worked under the authority of State Treasurer Joseph Malone.

After graduating from Boston High School Mr. Figueroa attended Newbury College for the Culinary Arts. As part of his scholastic experience, he participated in two further internships. Mr. Figueroa worked at the highly renowned and celebrated restaurants Biba, Pignolis as well as Sorrentos.

In the years following his academics, Mr. Figueroa worked for the Ironworkers Local 7 for seven years.  In addition, Mr. Figueroa worked and gained experience in the Property management and Real Estate industries.

Mr. Figueroa has two children, a daughter, Zoe Figueroa, age 21, and Max Ethan Figueroa, age 9.

There came the day of May 17th of 2017 that Mr. Figueroa was riding his jet ski in the general area of the Boston Harbor when he observed a maritime accident.  Without fear, he selflessly sprang into action and risked his own life in order to save the life of his fellow man. See PSR paragraph 95. During this incident Figueroa also rescued a second individual, reviving him, allowing him to reach shore safely.

The media "News Center 5" had occasion to report the matter in the following manner. "Mark Anthony Figueroa, a professional aqua-cross racer, also witnessed the crash and rushed to help.  A witness said Figueroa pulled one of the operators out of the water and brought him to shore.  'He looked to me like he wasn't breathing,' Figueroa said. The unconscious operator Figueroa rescued was rushed to the hospital from the scene." The El Mundo newspaper declared Mark Figueroa "Jamaica Plain's first hero."







## IV.  LETTERS OF SUPPORT

The Defendant is submitting letters of support that speak to his history and character

(Attached Exhibit 1).  Excerpts from the letters are written below.

**Barrett J. Hoban, Esq. writes in part:**

*"I have been a practicing attorney in the Commonwealth of Massachusetts for nearly 28 years and I have known Mr. Figueroa and his family for the past 11 and 15 years respectively… [I] remember that he risked his own life to save someone who suffered an accident while jet skiing in Boston Harbor a few years ago. He literally threw caution to the wind and leaped into action without a moment's hesitation or consideration to his own life and personal safety. I know I was very proud of him and his quick call to action when another's life was at stake. We truly could use many more people like Mr. Figueroa caring so much for his fellow man out and about in the community…*

*I have interacted with Mr. Figueroa and his son on many occasions over the past 10 years and also have a nearly 10-year-old daughter who has developed a relationship with Mr. Figueroa's*

*son, and his niece and nephew. Mr. Figueroa has mentored them and even my own sons who are now aged 21, 18, 16 & 14. He always tried to impart his life experience and wisdom of being physically fit and active for life and being capable both physically and mentally as he has taught them this crucial feature that this generation for the most part seemingly easily forgets. Especially important is his relationship with his son and nephew and he always taught them to strive to be scholar athletes, while going through formative schooling and to succeed and persevere no matter what obstacles are in front of them...*

*I have had the privilege to witness his dedication to his family and know he will be an asset to the community at large and no doubt he shall endeavor to leave a positive impact on our youth for the remainder of his days. I ask that you please consider his sterling actions as a father and lifesaver that proves he is worthy of leniency."*

**Geovanni Santiago, friend of the defendant, writes in part:**

*"Mark is a great person and an excellent friend. Since I met him, I have known him to be a generous, kind, and devoted character toward others. He is a person with a lot of integrity and really makes a great effort to make sure that he always acts correctly. The friends and family members who await his reintegration into society urge you to consider the friend, brother, the father, and the uncle that we all know and who stands before you today...*

*I can truly understand how difficult it is for you to have to decide of this type and under these circumstances, without really knowing the person in front of you, but I trust in God that you can look at this letter and feel all the support that the family and friends are trying to provide you. All this is to tell you that we trust your wise decision, always considering the best for everyone."*

**Doctor Lilibeth Santiago, friend of the defendant, writes in part:**

*"I met Mark Figueroa about 10 years ago while living in the state of Massachusetts. During this time, I have seen him in his role as a father, and a friend to my husband. Mark is outgoing and a very caring father...*

*I have also witnessed him help others who are strangers, but happened to need help at the time when he was able to offer a hand. Mark has assisted strangers in the water when their personal watercraft had failed, and at one point even saved a man's life in the Merrimack River when the jet-ski he was driving was involved in a crash. The next day the news outlets were telling the story of a man who would live to see his children grow thanks to the efforts of a stranger who happened to be on the water at the time of the accident and was able to prevent the injured driver from drowning...*

*A few years ago, when I completed by master's degree, Mark congratulated me and encouraged me to continue to pursue my dream of getting my Ph. D in psychology. I remember that day vividly, as he discussed his passion for culinary and cryptocurrency. Today, I have completed my Ph. D and Mark faces one of the toughest times in his life with an unknown future ahead of him. While my intention with this letter is to attest to his character, I realize that in your position you often get to see the worst of the individuals who pass through your courtroom, thus I'd like to give you a glimpse of the Mark that we've all come to love and appreciate."*

**Carmen Mercado, friend of the defendant, writes in part:**

*"My name is Carmen Mercado, I have known Mark for over four years. First on a professional level and then personal. I have watched him invest time with Max his son and Giselle his daughter from playing soccer, basketball, and going out and enjoying each other's company to teaching them responsibility and compassion. It is great to have someone like Mark as a friend, I promise you that, your Honor. When I needed a place to live, he made his home available without hesitation and I will never forget that because I was hopeless at that time. And like me at that time, I can only imagine the uncertain times Mark and his family are going through. That's why I kindly ask you to have in consideration the great, kind, compassion, and lovely human being he is. I am sure that this situation does not define him, your Honor. I'm asking you for leniency on his behalf."*

**Shirley Mojica, ex-wife of the defendant, writes in part:**

*"I, Shirley Mojica, mother of Max Ethan Figueroa, am writing this letter to vouch that Mark is an incredible father to our son…*

*I am a UMASS Amherst Alum. I am also a paralegal working remote full-time at one of the top personal injury law firms in New York City, Elefterakis, Elefterakis & Panek. I am taking the time to write this letter to show you the influence and importance that Mark has in our son's life…*

*We have a nine-year-old son named Max. Who is full of life, adventure, and has a bright future ahead. Max has one of those unbreakable bonds with his dad. Mark is a great man and father, who has taught and will continue to teach great character, morals, discipline, along with many more qualities needed to survive this world, above all, love. I took the liberty of writing this letter because of the tremendous pain that my son is currently in. I am devastated to see the damage caused by the separation of Max and his father. Max really needs his dad right now; he is constantly having episodes of grief. The fact that they have always been so close together with each other has affected my son in ways you can't even seem to imagine…*

7

*Aside from the needing to be together, Mark is an incredible man. It is hard to say that when you have split parents. But he has managed to make coparenting work. Always picking up Max on birthdays, holidays, school vacations, etc. For anything my son needs, Mark has always been there. He is a positive influence for Max, teaching him many life lessons. Always teaching him about different talents like swimming, saving money to buy things, being a good person, behaving well in school, listening to others, being a neat, clean person."*

## V. GUIDELINE ANALYSIS

The Government and Probation maintain that the defendant's base offense level is 22 because Mr. Figueroa laundered $870,560, which is more than $550,000, but less than $1,500,000. USSG §§ 2S1.1(a)(2), 2B1.1(b)(1)(H). Because Mr. Figueroa was convicted under 18 U.S.C. § 1956, a two-level enhancement applies. USSG § 2S1.1(b)(2)(B). The Government and Probation apply a six-level increase pursuant to USSG § 2S2S1.1(a)(2) alleging the defendant knew that the alleged laundered funds were the proceeds of an offense involving the distribution of controlled substances.  His total offense level, according to the Government and Probation, is therefore 30. Based on a total offense level of 30, and a criminal history category of II, the Government and Probation's calculation of the guideline range is 108-135 months.

The defendant has filed objections to the presentence report. Specifically, the defendant objects to $100,500 being added to the offense level calculation as that sum was returned to the defendant as a result of civil litigation. (See paragraph 23). The defendant further objects to paragraph 25 of the Offense Conduct which alleges that he is responsible for an alleged delivery of $138,600 by Coboj. This sum was not delivered by Figueroa. The defendant further objects to the amount of $109,100 that is referenced seized in paragraph 32 from one Leslie Yesabeth Nunez Jara being attributed to him or counting against him in the relevant Offense

Conduct. The defendant maintains that he did not in fact deliver or otherwise transfer any sum of money to this individual and Nunez neither stated or intimated such.

The defendant objects to the Base Offense Level calculation of 22 subtracting the amounts listed above, specifically $100,500; $138,600; and $109,100, from the alleged $870,560 results in an amount of $522,810 which is more than $250,000 and less than $550,000. Therefore, the Base Offense Level should be 20.

The defendant objects to the six-level enhancement specified in paragraph 49. As noted in footnote 2 on page 12 of the PSR, there is no evidence tying the defendant to specific drug transactions or quantities. The defendant maintains his Total Offense Level should be 22. Based upon a Total Offense Level of 22, and a Criminal History Category of II, the guideline imprisonment range is 46-57 months.

## VI.      FACTORS THAT WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

Pursuant to 18 U.S.C. § 3553(a)(l) through (7), the following factors are to be considered in imposing a sentence: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to satisfy the statutory purposes of sentencing; the kinds of sentences available; the applicable guidelines; pertinent Sentencing Commission policy statements; the need to avoid unwarranted similar conduct; and the need to provide restitution.

## VII.   SENTENCING RECOMMENDATION

The defendant has instructed counsel to ask for a time served sentence of twenty-four months. In the alternative the defendant is requesting a sentence of 46 months based on the low end of his guideline calculation. In the event this Honorable Court adopts the sentencing guidelines suggested by Probation and the Government, the defendant points to the above-listed factors that warrant a sentence outside of the advisory guideline system. Specifically, the defendant asks this court to consider that he has been continuously incarcerated since December 12 2021 under difficult circumstances in a country facility where the defendant contracted COVID-19 twice. The letters of support point to Mr. Figueroa as a devoted father, friend, son, and neighbor. His lack of any history of violence, his selfless, heroic actions in risking his life to save strangers all suggest that a sentence below the Government and Probation's guideline range is appropriate.

Respectfully Submitted,

MARK FIGUEROA
By His Attorney

/s/ James E. McCall
107 Union Wharf
Boston, MA 02109
McCall_Attorney@yahoo.com
(617) 720-2900
BBO# 327365

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by complying with this court's directives on electronic filing.

Dated:  December 11, 2023                  Signed: /s/ James E. McCall